661 So.2d 975 (1995)
STATE of Louisiana
v.
Spencer GEORGE.
No. 95-K-0110.
Supreme Court of Louisiana.
October 16, 1995.
*976 Martin E. Regan, Jr., Regan, Manasseh, & Boshea, New Orleans, for applicant.
Richard P. Ieyoub, Attorney General, Douglas P. Moreau, District Attorney, Gwendolyn K. Brown, Baton Rouge, Antonio M. Clayton, Port Allen, Darwin C. Miller, Baton Rouge, for respondent.
DOUCET, Justice Pro Tem.[1]
Defendant, Spencer George, was charged by a bill of information with two counts of distribution of marijuana in violation of La. R.S. 40:966(A). Defendant entered a plea of not guilty, and after trial by jury, was found guilty as to one count (count # 2). The trial court sentenced George to fifteen years at hard labor with credit for time served. Defendant appealed to the first circuit, who, with one judge dissenting, affirmed his sentence and conviction. Defendant then applied to this court for writs alleging the appellate court committed four errors in its analysis and handling of the case. We granted writs to consider defendant's complaints.

Facts
Sergeant Tim Collins of the Plaquemine Police Department and Detective Herbert Anny of the Baton Rouge City Police Department were part of an undercover drug operation supervised by Baker City Police Detective David Almond.
According to the state's case, on October 16, 1993, Sgt. Collins was riding with a confidential informant (C.I.) on Rafe Mayer Road in Baker as part of the undercover sting operation. At approximately 8:15 P.M., as the two approached Cage's Liquor Store, the C.I. said, "That's Spencer. Pull up." Collins stopped the car, approached the subject, and was able to purchase a "baggie" of marijuana for $20.00. This sale was the basis of count one of the indictment. In the week following the sale, Collins picked defendant's picture from a photographic array assembled by Det. Almond, but neither initialed the back of the photograph he identified nor retained the array. Collins submitted a typed report, in connection with the sale, which identified the defendant by name and which described him as about 5'7" tall, weighing 140 pounds, having short hair and wearing a warm-up suit and white tennis shoes.
At trial, Sgt. Collins admitted the report was inaccurate, stating that his hand written notes, which had subsequently been destroyed, listed the seller's weight as 240 pounds, not the 140 pounds typed on the report. Collins blamed the discrepancy on clerical error. Det. Anny estimated defendant's weight at trial to be 215 pounds.
On October 28, 1991, the police returned to the area of Cage's Liquor Store on Rafe Mayer Road with Herbert Anny, an undercover agent borrowed from the Baton Rouge City Police. After observing a transaction between a man on the street and a subject in a burgundy Nissan Maxima, Louisiana license # 873 X 897, Anny made another purchase of marijuana from the defendant at the unusually high price of $160 dollars for one-half ounce. At the time of this second sale, Anny testified, the defendant was at the wheel of a car which records showed to be owned by his common law wife, Laura Coleman. This transaction made up the basis for count # 2 of the indictment.
Det. Anny also picked out defendant's picture from a photographic lineup assembled by Det. Almond. This photo array, like *977 the one shown to Sgt Collins, could not be produced at trial. Det. Anny described the seller as wearing a white "Tee" shirt and blue jeans and as having unkempt hair which was definitely not in a jeri-curl (as it was in court), a beard and mustache which were "tied in" to each other. Det. Anny could not remember seeing any gold or a cracked front tooth in the seller's mouth (defendant displayed a prominent cracked front tooth and a set of gold caps to the jury). Anny admitted that his typed report did not contain all of these details, but maintained that his written notes, which he had not retained, reflected matters correctly. Anny testified that he was positive the defendant was the person who sold him the marijuana, explaining that defendant had a face a person could not forget. Det. Almond stated that he was confident that Anny was talking about Spencer George in his identification.
At this point the State rested its case in chief.
Wayne Thomas, who is the owner and sole employee of A & W Auto Repair On Wheels in Baton Rouge, testified that Laura Coleman's 1987 burgundy Nissan Maxima, bearing Louisiana license # 873 X 897 was in his shop and inoperable from October 20 to November 2, 1991. His testimony was substantiated by records from his shop reflecting the work done during that period.
Billy Ray, defendant's cosmetologist, testified that between September 1991 and January 1992 he cared for defendant's hair and that, during that period, defendant wore it shoulder length, or longer if it needed trimming. Mr. Ray's appointment book, which was introduced into evidence, confirmed that he had given defendant a jeri-curl on September 4, 1991, and had trimmed about 1½ inches off defendant's hair in January 1992, an amount which he considered to be normal growth for a four month period. Ray stated that defendant's hair could not have been cut short after September 4, 1991 and have reached the length it was in January 1992.
The defendant, who acknowledged a prior conviction for distribution of marijuana, flatly denied making either sale. His brother, Reginald, testified for the defense and took credit for the sales, explaining to jurors that he, and not the defendant, "hung out" on the corner outside of Cage's Liquor on Rafe Mayer. Reginald also recalled bilking a man by selling him one-half ounce of marijuana for $160, although he placed the date of that transaction on October 16, 1991, and was not sure of his other dates. Reginald claimed that he had been in that area on a daily basis and he was, therefore, confident that the police had arrested the wrong man when they took the defendant into custody. Reginald denied any knowledge that the defendant had made either of the sales charged against him. Both men confirmed that while Reginald habitually wore warm up suits and blue jeans, Spencer never wore either, but preferred slacks. Further, both brothers insisted that Reginald had regular access to the car registered to Laura Coleman, any time it was not garaged for repairs. Following the testimony of the George brothers, and the introduction of defense exhibits, the defense rested.
Reginald George was then called by the state on rebuttal. He maintained that it was he who sold marijuana to the undercover officers on the dates in question and admitted selling control substances, both before and after those dates. He confirmed that he had at least two prior convictions and that he was arrested some months later on drug charges and became a confidential informant to keep from being prosecuted. However, he maintained that this was subsequent to October 1991, and that he was not the confidential informant who "fingered" his brother.
Both Sgt. Collins and Det. Anny, who were also called on rebuttal, testified that they had purchased marijuana from both of the George brothers. Sgt. Collins stated that he made three separate buys on October 16, 1991, one purchase each from Reginald and Spencer George and a third purchase from another subject, Cornell Jones.
Det. David Almond was then recalled. He testified that he had obtained warrants for, and arrested, Reginald and Spencer George and Cornell Jones. Almond stated all of the warrants and arrests were based upon undercover purchases by Sgt. Collins and Det. Anny. However, he also stated that the *978 charges for Reginald George were dropped when Reginald agreed to become an informer. The district attorney then asked Det. Almond if Reginald George had "snitched" on his brother. Almond answered "Yes, sir."
On cross examination, Det. Almond maintained that he had a report to back up his statement which he could produce, if so desired. Almond was then asked by the defense, "You're telling me that hehe said his brother was out there?" He answered, "Yes, sir." At this point the defense request for a recess was denied by the trial judge. A subsequent request for surrebuttal was also denied by the trial court.
Almost certainly, as the result of significant discrepancies in the typed police report regarding the description of the man who sold Tim Collins marijuana on October 16, 1992, jurors acquitted the defendant on count one of the indictment. Significant discrepancies also shadowed Anny's testimony; but the officer remained steadfast in his identification of the defendant. That, along with Det. Almond's testimony that Reginald George had "snitched" on his brother, no doubt played a significant factor in the jurors returning a conviction on the second count of the indictment.

LAW AND DISCUSSION
On appeal to this court, appellant raises four assignments of error, among which we find the claim of "insufficiency of the evidence." In State v. Hearold, 603 So.2d 731, 734 (La.1992) we explained:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). [Footnote omitted.]
We have reviewed the record in accord with Jackson, and find that the evidence, when viewed in the light most favorable to the prosecution, establishes the elements of distribution of marijuana beyond a reasonable doubt.
The principal criterion of a Jackson v. Virginia review is rationality. This is because under Winship and Jackson Fourteenth Amendment due process demands that in state trials, as has been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. If rational triers of *979 fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. [Footnotes omitted.]
State v. Mussall, 523 So.2d 1305, 1310 (La. 1988).
When one considers the unwavering testimony of Det. Anny as to the identity of the person from whom he purchased marijuana on October 28, 1991, (Spencer George), and the unrebutted testimony of Det. Almond that Reginald George had "snitched" on his brother and had "... said his brother was out there," we find the jury's decision to convict on count two to be rational.
Appellant also raises as error the trial court's denial of his motion for mistrial following the hearsay testimony of Sgt. Collins implying defendant was a drug dealer. The trial judge decided an admonition to the jury to disregard the statement was sufficient to cure any prejudice caused by the remark. Sgt. Collins' activity and testimony was only in connection with the undercover operation which took place on October 16, 1991, and which formed the basis for count one of the indictment against the defendant. Inasmuch as the jury found defendant not guilty as to count one, this alleged error is moot. See La.Code Crim.P. art. 921.
In his next assignment of error, Spencer George argues that the first circuit erred in concluding the trial court had not abused its much discretion when it denied his motion for mistrial after the state elicited testimony of his post arrest silence. During his testimony, Det. Almond was asked by the state if the defendant had been read his rights after he was arrested. Defense counsel objected to this line of questioning as being irrelevant. When the trial judge overruled the objection, defendant stipulated that he had been advised of his rights. The prosecutor then asked Almond, "After you heard his rights read to him, did he make any statements?" Almond answered, "No, sir." As the prosecutor proceeded with his next question, defense counsel objected to the testimony and moved for a mistrial. The district attorney opposed defendant's motion arguing the testimony was not a comment on the defendant's exercise of his right to remain silent. The trial judge denied defendant's motion but admonished the jury that, "The fact that he [the defendant] chose to remain silent should not be held against him in any manner."
This court has expressed its disapproval of placing before the jury evidence that the police advised the defendant of his Miranda rights at the time of his arrest when the testimony does not establish a predicate for admitting a subsequent oral or written inculpatory statement and thereby invites jurors to consider the defendant's post-arrest silence as an impeachment of an exculpatory account later offered at trial. State v. Mosley, 390 So.2d 1302 (La.1980); Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Nevertheless, not every reference to the defendant's post-arrest silence requires reversal. See State v. Bell, 446 So.2d 1191 (La.1984); State v. Middlebrook, 409 So.2d 588 (La.1981). In Mosley, the court found that prosecutor's single "oblique and obscure" reference to Miranda warnings during the testimony of the two arresting officers, without explicit mention of the defendant's post-arrest silence, did not prejudice the defendant. State v. Mosley, 390 So.2d at 1305-1306.
In this case, the prosecutor persisted in the face of a defense objection and eventual stipulation and placed before the jury evidence that the arresting officers had advised the defendant of his Miranda warnings and that the defendant had not made any statements. At the request of defense counsel after the court denied his motion for a mistrial, the trial judge admonished jurors to draw no adverse inferences from the defendant's post-arrest silence. The record reflects that the state maintained below, and that the first circuit ultimately agreed, that the state's line of questioning was an attempt to summarize the extent of the investigation and was not *980 designed to exploit defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense.
Although this case, unlike Mosley, involves an explicit mention of the defendant's post-arrest silence, Doyle condemns only "the use for impeachment purposes of [the defendant's] silence at the time of arrest, and after receiving Miranda warnings...." Doyle v. Ohio, 426 U.S. at 619, 96 S.Ct at 2245, 49 L.Ed.2d 91 [emphasis supplied]; see State v. Arvie, 505 So.2d 44, 46 (La.1987), wherein we stated "... the prosecutor may not use the fact of an accused's exercise of his constitutional right to remain silent, after he has been advised of this right, solely to ascribe a guilty meaning to the silence or to undermine by inference an exculpatory version related by the accused for the first time at trial." In this case, the trial judge's admonition made the prosecutor's remarks too obvious to miss, and invited the jurors to wonder why the defendant did not offer his alibi defense to the police at the time of his arrest. Nevertheless, in brief, counsel does not dispute the state's claim that it did not affirmatively exploit the testimony to impeach the defendant's exculpatory account offered at trial. In the absence of that affirmative misconduct by the state, reasonable jurors may have understood the testimony in the way that the first circuit took the remarks, as a description of how the police investigation culminated in the formal arrest of the defendant with the routine incidents of custody, e.g., the reading of Miranda warnings to the person arrested. Accordingly, we find this assignment does not present reversible error.
Finally, defendant argues that it was reversible error for the trial court to deny him the opportunity to present surrebuttal testimony to impeach the rebuttal testimony of Det. Almond when Almond's testimony introduced a new issue, that defendant's brother had "snitched" on him.
This issue was serious enough to prompt a dissent at the appellate level. The prosecutor, on rebuttal, made a concerted effort to place before jurors evidence that Reginald George had "snitched" on his brother as well as other persons to avoid prosecution for his own drug dealing. According to Reginald, the corner outside Cage's Liquor store on Rafe Mayer was his spot to deal drugs, not his brother's, and he had made both sales on October 16 and October 28, 1991. The state partially corroborated that testimony on rebuttal when Officer Collins confirmed that he had also purchased marijuana from Reginald as well as his brother, Spencer, on October 16, 1991, and Anny testified that he, too, had bought marijuana from Reginald on October 22, 1991, a week before he made the purchase from Spencer, his brother. After his arrest in the same drug sweep which netted his brother, Spencer, Reginald agreed to work as a confidential informant for the Baker Police. Over defense objection that the prosecutor had blocked his efforts to obtain the identity of the confidential informant in this case, Det. David Almond of the Baker Police, who had supervised and coordinated the undercover operations, testified specifically that Reginald had "snitched" on his brother. Counsel did not object at this point but later asked for a recess after Almond testified on cross examination that Reginald had in fact informed him that the defendant "was out there," i.e., dealing drugs. The trial court denied counsel's subsequent motion for surrebuttal to give him a chance to recall Reginald. The court also denied counsel an opportunity to make a proffer for the record for Reginald's anticipated surrebuttal testimony.
The state takes the position that Almond's testimony was relevant to impeach the credibility of Reginald George. The state presumably means that Reginald's mention of his brother's name to Almond impeached his own trial testimony that he, not his brother, was the George "out there" in the marijuana trade and that he had no knowledge of his brother trafficking in marijuana during that October. The majority opinion did not directly address this point. It found that counsel had failed to object to this line of testimony and that the judge therefore did not abuse his discretion in refusing the defense request for surrebuttal. The dissenting appellate judge agreed with the state and defendant that Reginald could not have been the informant in this case because his arrest for the *981 October 1991, transactions coincided with his brother's arrest some months later. In the dissenting judge's view, Almond had, therefore, interjected a new issue on rebuttal which the defendant had the right to contest in its own rebuttal case. The dissent considered the defense request for surrebuttal sufficient to preserve the claimed error for review.
Despite the vagueness of Almond's testimony, the clear implication of the state's rebuttal testimony was that Reginald informed on defendant on October 28, 1991, and furnished additional information implicating defendant in other drug dealings. Reasonable jurors could have concluded that the state was impeaching Reginald's trial testimony exculpating the defendant from the marijuana trade during that October with evidence that he had named his brother as a marijuana trafficker to Almond after his own arrest, i.e., that his brother was also "out there." If used as impeachment material, and the state claims no other use for it, that testimony was not hearsay. It amounted to evidence of a prior inconsistent statement by the witness. In any event, defense counsel made no hearsay objection at that point. Nor did he object that the state had failed to lay the proper predicate for Almond's testimony by first confronting Reginald with his statement and giving him a chance to deny or explain it. In respect to prior inconsistent statements, Louisiana's Code of Evidence has made no change to prior law. See former La.R.S. 15:493; La.Code Evid. art. 613 (extrinsic evidence of a prior inconsistent statement is admissible "... after the proponent has first fairly directed the witness' attention to the statement ... and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.").
Louisiana's foundation requirements for admitting extrinsic evidence of a witness' prior inconsistent statements are not inflexible. As the Official Comments to Art. 613 observe, this court has suggested on more than one occasion that the opportunity to recall the witness may cure any prejudice in failing to lay the proper predicate before introduction of a prior inconsistent statement. See State v. Thibodeaux, 380 So.2d 59 (La.1980); State v. Temple, 394 So.2d 259 (La.1981). In Temple, this court thus observed that defense counsel apparently waived any objection he had to the lack of foundation for the state's introduction of a witness's prior inconsistent statement during its rebuttal case by failing to move for surrebuttal. Id., at 261.
It is clear that on rebuttal the state interjected new themes and issues of an extremely prejudicial nature. The prosecution is entitled in rebuttal to explain, repel, counteract, or contradict evidence adduced by the defense to strengthen its own case. It may not, however, introduce new issues or facts, or reserve part of its case in chief for rebuttal. State v. Deboue, 552 So.2d 355, 362 (La.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990); State v. Williams, 445 So.2d 1171, 1180, 1181 (La. 1984); State v. Huizar, 414 So.2d 741, 751 (La.1982).
When new facts or issues are adduced on rebuttal, a trial judge has the discretion to permit the introduction of additional defense evidence prior to closing argument. La.Code Crim.P. art. 765(5). An abuse of discretion resulting in prejudice to a defendant's presentation of a defense or impingement of his right to impeach the credibility of state witnesses constitutes reversible error. La. Const. art. I, § 16; State v. Harper, 93-2682, pp. 7, 8 (La. 11/30/94), 646 So.2d 338 at 342, 343; State v. Harrison, 553 So.2d 422, 425-426 (La.1989) citing 6 Wigmore, Evidence, § 1874 (Chadbourn Rev.1974), La.Code Evid. art. 611(E) and Handbook on Louisiana Evidence Law, Pugh, Force, Rault & Triche, Authors' Notes to Article 611(E) (West 1995).
There are no formal or codified requirements detailing any specific form for an objection. All that is required is that a party make clear, at the time an order of the court is made or sought, the action which he desires the court to take, together with an objection and grounds. La.Code.Cr.P. art. 841; State v. Vanderpool, 493 So.2d 574, 575 (La.1986); State v. Porter, 93-1106, p. 3, fn. 2 (La. 7/5/94), 639 So.2d 1137, 1139, fn. 2. Defense counsel may not have objected to the lack of a proper foundation for the state's questions to Almond, but he did ask to recall *982 Reginald in a surrebuttal case. We find that motion sufficient to have preserved any error for review.
In this case, surrebuttal offered the only means of combating the devastating revelations brought out by the state's last witness. Det. Almond's testimony destroyed whatever remained of Reginald's credibility and, in the process, completely undermined defendant's misidentification defense. That a police officer might mistake a seller's identity during the rigors of a three month drug investigation could be, and apparently was, understood by a jury which acquitted the defendant on count one. Jurors would be far less likely to believe that a man would mistake or misidentify his brother when pointing him out to police as a dealer.
In oral argument before this court, it was suggested that any issues raised by Det. Almond's testimony on rebuttal could have been dealt with by the defense on its cross examination of the rebuttal witness. We disagree. Det. Almond had just testified that Reginald George had "snitched" on his brother, defendant, Spencer George. Although Almond did not directly state that Reginald told him Spencer was selling marijuana, when one views Almond's testimony in context of the entire case, that implication is inescapable. The only line of questioning that testimony left open to the defense on cross examination was to ask Almond to explain his statement further, thereby opening the door for "other crimes" testimony. Such testimony is clearly inadmissible and would, no doubt, have been just as damaging as the former. See State v. Prieur, 277 So.2d 126, 128 (La.1973); La.Code Evid. art. 404.
The trial court erred in denying the motion and that error prejudiced the defendant by inviting jurors to consider the statement as substantive evidence on the two counts charged against the defendant. Although the trial court has broad discretion over the conduct of trial, the denial of surrebuttal in this instance constituted an abuse of that discretion inasmuch as it prevented the defense from presenting "`evidence explaining away the effects of new facts brought forward by the proponent in rebuttal....'" State v. Harrison, 553 So.2d 422, 426 (La. 1989) [quoting 6 Wigmore, Evidence, § 1874 (Chadbourn Rev.1974)]. Although defendant's acknowledgment that he had been convicted in March of 1990 of marijuana distribution arguably prejudiced him more than any impeachment of his brother, who testified before jurors as a self-confessed drug dealer, this assignment presents reversible error.
Accordingly, for the reasons stated, the defendant's conviction is reversed and the sentence set aside; the case is remanded to the district court for a new trial.
REVERSED AND REMANDED.
WATSON and KIMBALL, JJ., dissent.
VICTORY, Justice, dissenting.
I cannot agree the trial court abused his discretion in denying surrebuttal in this case. As the majority states, Reginold George had already denied in rebuttal that he had not fingered his brother.
NOTES
[1] Judge Ned E. Doucet, Jr., Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J. not on panel, recused.

Rule IV, Part 2, § 3.