CHEHARDY, Judge.

STATEMENT OF THE CASE

On December 18, 1998, the Jefferson Parish District Attorney’s Office filed a three-count bill of information charging defendant, Olin Grant, with 1) attempted simple burglary, a violation of La. R.S. 14:27:62.2; 2) simple burglary, a violation of La. R.S. 14:62.2; and 3) distribution of a controlled dangerous substance: crack cocaine, a violation of La. R.S. 40:967 A. Defendant was arraigned on January 4, 1999, at which time he pled not guilty. On March 1, 1999, the trial court heard defendant’s motion to suppress identification.
On the day of trial, March 3, 1999, the trial court denied defendant’s motion to *11 suppress the identification, and the matter proceeded to trial before a twelve-person jury on Count 3 only, the distribution of cocaine charge.[1] At the conclusion of deliberations later that day, by a vote of 10-2, the jury found defendant guilty of distribution of cocaine.
On April 6, 1999, defendant filed a motion for new trial, and a motion for post-verdict judgment of acquittal. The trial court denied both motions, and after defendant waived sentencing delays, the trial court sentenced defendant to 15 years at hard labor. On April 7, 1999, defendant filed a motion to reconsider sentence. The record does not reflect a ruling upon that motion. Defendant also filed a timely appeal.[2]

FACTS

The following facts were developed from trial testimony. Detective Russell Lloyd of the Gretna Police Department Narcotics Division testified that he was involved in an undercover narcotics investigation on November 11,1998. He told the jury that, at about 2:00 a.m. on that date, he drove his unmarked car to the 900 block of Cook Street in Gretna. While he was driving down the street slowly, he was flagged down by a man who asked him what he was looking for. Detective Lloyd later identified the man as defendant. Detective Lloyd testified that he told defendant he was looking for a “20,” a twenty dollar amount of crack cocaine. Defendant told Detective Lloyd that he didn’t have it on him, but he could take him to it.
Defendant got into the detective’s car, and directed the detective to the intersection of Franklin and Cook Streets. Defendant exited the vehicle and walked into a nearby apartment complex. A few minutes later, defendant returned to the car and handed Detective Lloyd what was later confirmed to be crack cocaine in exchange for a twenty dollar bill. Detective Lloyd later positively identified defendant in a photographic lineup and made an in-court identification of defendant at trial.
Detective Claude Koenig, a narcotics investigator for the Gretna Police Department, testified at trial that he was also involved in the undercover narcotics investigation on November 11, 1998. He told the jury that he and Detective James Price were following about two blocks behind Detective Lloyd in separate vehicles, monitoring Detective Lloyd’s activities on an audio transmitter. Both Detective Koenig and Detective Price testified that they monitored the transaction between defendant and Detective Lloyd. Neither man, however, was close enough to be able to identify defendant.
At trial, defendant testified on his own behalf. He told the jury that he had a two-year-old son. He testified that when his son visits, he dedicates all of his time to his son. He told the jury that at 2:00 a.m. on November 11, 1998, he was sleeping with his son at his mother’s house. He also testified that he wore glasses all of the time, and he was not wearing them in the picture used for the photo identification.
Ms. Murline Grant, defendant’s mother, testified at trial that defendant lived with her and she remembered that defendant was at her home in the early morning hours of November 11, 1998, because that was a time during which her grandson, defendant’s son, was staying at the house with them. She testified that when her grandson was at her house, defendant took sole care of him. She said that her son would not have been out at 2:00 a.m. when her grandson was there, and that she was positive that her son was home at that *12 time. She also recalled that evening because she was awake all night.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that the trial court erred by permitting the prosecutor to impeach his testimony with his post-arrest silence. Because we find this assignment to be valid, and warranting reversal, we preter-mit discussion on all other assignments of error.
During the state’s cross-examination of defendant, the following dialogue took place between the assistant district attorney and defendant:
Q. So what you’re telling this jury is that you’re wrongly accused; is that correct?
A. Yes, sir.
[[Image here]]
Q. Now, Mr. Grant, I’m sure that if you’re wrongly accused and you know that you were with your grandmother [sic] at that time, I’m sure you would tell the police officers and you would tell your attorneys and tell the State . when you’ve been in court that of course, Hey, you can’t have— go talk to my grandmother or talk to my mother, I was with her. Did you tell anybody?
A. I talked to my attorney about who I was with.
Q. Did you talk to anybody else as far as when they were screening your case when you first got arrested and said, I was with my mother that night. Go ask her.
A. No, sir.
Q. Okay. Did you tell anybody in the District Attorney’s Office when they were deciding whether or not to accept charges on you? I think the charges as read by the clerk that your bill of information was filed on November — -excuse me, December 18th of 1998. So if somewhere in that period where the District Attorney’s Office was deciding to accept the charges if they had enough in evidence against you, did you tell anybody at that time that you were with your mother?
A. No, sir.
Q. And I notice that also you were arraigned on, if I’m correct-I’m not sure of the date. I think it was sometime in January when you were arraigned and they actually bring you into court, did you tell anybody at your arraignment, Hey, it couldn’t have been me, I was with my mother at that time?
A. Well, arraignment made my plea for me; they pleaded not guilty for me and set the court date.
Q. Well, you were in court that day, weren’t you?
A. I was at arraignment court.
Q. Exactly. You were at arraignment court, so you were in court. Did you tell anybody in arraignment court, Hey, I was with my mother that day, it couldn’t have been me?
A. No, sir.
Q. And you’ve been in here, I think, on some motions and several other times that you came in here with your attorneys, and you were in court regarding some motion hearing dates and everything— preliminary dates on this case, isn’t that correct?
A. On what date?
Q. November — January the 25th, December or excuse me, February the 8th, those are a couple of other dates that you were actually in court on this case, weren’t you?
A. On this; yes, sir.
Q. You remember being in court here several times?
A. Yes, sir.
Q. And at that point, did you ever tell anybody, Hey, it couldn’t have been *13 me, I was with my mother at that time?
Mr. Goetz [Defense Attorney]:
Your Honor, I’m going to object at this point. The defendant’s already — din’s already told him, the district attorney that he instructed, he told his attorney that he was with his grandmother [sic]. Revealing that information in any other court proceeding— he’s already told his attorney; it’s subject to our privilege, Your Hon- or. I don’t believe that it’s proper for the district attorney to comment on his refusal to testify at any previous proceedings.
Mr. Kennedy [Prosecutor]:
Judge, I have an opportunity to cross examine him regarding his opportunities for telling somebody. Obviously if somebody believes that they didn’t do something, I have a right to question them as to whether or not they told somebody where they were at the time.
Mr. Goetz:
And he’s answered that question, Judge. He told his attorney.
Mr. Kennedy:
Judge, I have a right to go into specific instances where he had that opportunity to bring it up.
The Court:
Let’s move on.
Mr. Kennedy:
Thank you.
Q. So, at no point at no time did you ever tell anybody with the district attorney’s office or anybody else related to the state prior to your testimony today that you were with your mother on that date, did you?
A. No, sir.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court addressed the issue of whether a prosecutor could seek to impeach a defendant’s exculpatory story, told for the first time at trial, by cross-examination as to the failure to tell the story after receiving Miranda warnings at the time of arrest. The Supreme Court held that the use for impeachment purposes of a defendant’s post-arrest silence violated due process.
The warnings mandated by [Miranda ], as a prophylactic means of safeguarding Fifth Amendment rights ... require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the ar-restee’s exercise of these Miranda rights. Thus, every postarrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.
Id. at 617-18, 96 S.Ct. at 2244-45 (footnotes omitted) (citations omitted). See also, State v. Arvie, 505 So.2d 44, 46 (La.1987); State v. Sam, 412 So.2d 1082 (La.1982).
We have previously held that a brief reference to a defendant’s post-arrest silence does not mandate either a mistrial or reversal where the trial as a whole was fairly conducted, where the proof of guilt was strong, and where the prosecution made no use of the silence for impeachment purposes. State v. Campbell, 97-369 (La.App. 5 Cir.11/25/97), 703 So.2d 1358; State v. Troulliet, 643 So.2d 1267 (La.App. 5 Cir.1994).
*14 In State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 979-980, the Louisiana Supreme Court also held that not every reference to a defendant’s post-arrest silence requires reversal. The George court found that “Doyle condemns only ‘the use for impeachment purposes of [the defendant’s] silence at the time of arrest, and after receiving Miranda warnings ....’” George, 661 So.2d at 980.
La.C.Cr.P. art. 841 provides, in pertinent part that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” However, in this matter, as shown above, defendant’s attorney objected to the questioning during cross-examination of defendant, preserving the issue for appeal.[3]
Upon review, it is obvious that the prosecutor’s line of questioning in this case was not merely an oblique reference to defendant’s post-arrest silence. Rather, as explained in his response to defense counsel’s objection at trial, the prosecutor was trying to impeach defendant’s credibility with his post-arrest silence. The prosecutor specifically asked why defendant did not “talk to anybody else” ... “when you first got arrested.” This is precisely the type of questioning forbidden by Doyle and its progeny. Because it is “fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial,”[4] we are compelled to find that this error warrants reversal.
For the foregoing reasons, defendant’s March 3, 1999 conviction on the charge of distribution of cocaine is hereby reversed. The matter is remanded to the trial court for a new trial. See State v. Domingue, 470 So.2d 1013 (La.App. 1 Cir.1985), writ denied, 477 So.2d 97 (La.1985); State v. Sam, supra.[5]
REVERSED; REMANDED.

. The record reflects that the remaining counts were set for trial on April 7, 1999. On that date, defendant pled guilty to both counts. The trial court thereafter sentenced defendant to five years of imprisonment at hard labor on each count, to be served concurrently with each other and with any other sentence defendant is serving.

. In addition to the brief filed by defendant’s counsel, defendant filed a pro se appellant brief.

. See, State ex rel. Walker v. State, 98-0916 (La.3/19/99), 733 So.2d 1178, 1179, where the Louisiana Supreme Court held that "[t]rial counsel's objection on relevancy grounds” to the use of defendant's post-arrest silence "adequately preserved the issue for review.”

. Doyle, 426 U.S. at 617-18, 96 S.Ct. at 2244-45.

. As the only conviction and sentence before us in this appeal is for defendant's distribution of cocaine charge, any other conviction and subsequent sentence defendant may be serving is not affected by this opinion.