770 So.2d 831 (2000)
STATE of Louisiana
v.
Ignatius WEAVER.
No. 99-KA-2376.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 2000.
*832 Harry F. Connick, District Attorney, Jane L. Beebe, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff-Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant-Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER.
BYRNES, J.

STATEMENT OF THE CASE
On August 14, 1998, defendant was charged with two counts of armed robbery. Ms. Keisha Johnson was the victim. On February 1, 1999, the State amended the bill of information to change the second count to first degree robbery. On February 25, 1999, a twelve-member jury found defendant not guilty on Count 2, but was hung as to Count 1. Defendant was retried on Count 1 on March 22, 1999, and was found guilty as charged by a twelve-member jury. Defendant filed a motion for new trial that was denied on May 21, 1999. On June 21, 1999, the trial court found defendant to be a second offender pursuant to a multiple bill filed by the State. Defendant was sentenced to forty-nine and one-half years at hard labor without benefit of parole, probation or suspension of sentence.

STATEMENT OF THE FACTS
Officer Clarence Mitchell testified that in the course of investigating a "miscellaneous case" in 1998, he searched the home *833 of defendant and his wife, Robinette Robinson,[1] where he found a suitcase that contained pawn tickets and a newspaper clipping[2] describing the June 4th Johnson robbery.[3] He noted that one ticket described "a whole bunch of jewelry" and bore the signature, "Ignatius Weaver."
Officer Mitchell then returned to the Sixth District Station where he learned that the jewelry listed on the pawn tickets matched the description of the jewelry Ms. Johnson said had been stolen from her in the June 4th robbery. Officer Mitchell testified that he was able to recover most of Ms. Johnson's stolen property from the pawn shop. Officer Mitchell visited Ms. Johnson at her residence to show her a color photo-lineup, and she chose defendant's picture.
Ms. Keisha Johnson testified that on the afternoon of June 4, 1998, she and her five year old niece got off the bus at Louisiana and Annunciation and that there was a man behind them as they walked. Ms. Johnson stated that the man came over to her, put a gun to her head, and tried to remove her chain which would not come off. He continued to hold the gun on her as she removed her jewelry, and she said that he walked and then ran from the scene. She stated that the robber wore a black shirt and blue jean shorts. She chose defendant's picture out of a photographic lineup; and, she testified that a week after the robbery, she saw defendant at the house across the street from her. She further testified that she told the neighbor at whose house she saw defendant that he was the man who robbed her. She said that the neighbor told her that defendant was buying a car from him and that he would talk to defendant about the robbery.
Michael North testified that he was playing basketball with defendant on the afternoon of June 4, 1998 at Shakespeare Park. He further stated that defendant had his children with him, and North said that he remembered the date because it was the day that the swimming pool opened.
Johnny Seymour testified that he was also playing basketball with defendant on the afternoon of June 4, 1998. He further testified that defendant was with his brother, two other men, and his two sons. He admitted that he could not remember on which team defendant played.
John Lacen testified that he went to the park on the afternoon of June 4, 1998, where he saw defendant and spoke with him. He further testified that he knew that one of the sons of defendant had a birthday on June 3 and that he had promised him some crawfish. He said that he left the park at 4:00 p.m.
Carolyn Smith testified that defendant was an in-house patient at the Christian Community drug treatment center from June 17 to June 27, 1998.
Everett Harris, who was also known as Al, testified that he knew both defendant and Keisha Johnson, a neighbor. He stated that Ms. Johnson came over to his house to tell him that the person who had come to his house had robbed her. Harris *834 testified that defendant had not come to his house that day and that the person that Ms. Johnson claimed was the robber was a rapper named Goldamine who wanted to buy a car. He further testified that Goldamine looked very much like defendant. Harris also stated that to his knowledge, defendant had not been at his house on the day that Ms. Johnson said that she had seen defendant there.
Sylvia Bridgewater, defendant's mother, testified that defendant clipped out the newspaper article about the robbery that was found in the suitcase because she had been robbed in the same area. She further testified that the defendant had always clipped articles out of the newspaper. Ms. Bridgewater stated that pawn slips in his name could have been for others because people would have him pawn items for them since he had an I.D.:
Q. Do you have any knowledge as to why Ignatius Weaver had the pawn slips for various things?
A. Because Ignatius pawns everything for everybody because he has to sign. Anybody could come. Ignatius is a person where he just don't know how to say, no. If somebody come up and ask him or give him a sad story, you know, about helping themthat's just the kind of person he is.
Q. And so he had credentials or whatever the pawn shop needs? What do they need?
A. An I.D.
Q. How long has he done that?
A. Quite a while. He's done pawn a T.V. for my daughter. He even bought a car for my daughter with his I.D.
Ms. Bridgewater's testimony never makes any specific reference to the particular pawn ticket covering Ms. Johnson's stolen jewelry. Nor did she claim to have knowledge of who that pawn ticket might belong to if not her son.
She further stated that defendant always had his children with him after 2:30 p.m. when he left his job at Tasty Donuts and the children got out of school.
Robinette Weaver, defendant's wife, testified that defendant would pawn items in the house if money were short and that he would pawn things for others because he had an I.D. She did not testify that the pawn slip in question was for items that Ignatius had pawned for a third party. She did not testify that she knew of any third party for whom Ignatius obtained the pawn ticket in question. She testified that she had never seen him with a gun in the house.

DISCUSSION

ERRORS PATENT
A review of the record shows no errors patent.

ASSIGNMENTS OF ERROR NO. 1 & PRO SE ASSIGNMENT OF ERROR NO. 1
In these assignments of error, defendant complains that the prosecutor harassed defense witnesses both inside and outside the courtroom and that a mistrial should have been granted because the prosecutor improperly referred to race and religion in cross-examining the defense witnesses. Defendant admits that no motion for a mistrial was made, but he argues that he is entitled to a new trial because the prosecutor's comments created prejudice against defendant. Because no motion for a mistrial was requested, defendant cannot complain of any error due to the failure to request either a mistrial or an admonition. La.C.Cr.P. arts. 770, 771, 774; State v. Chambers, 95-0898 (La.App. 4 Cir. 12/28/95), 666 So.2d 716, writ denied 96-1699 (La.7/30/97), 697 So.2d 593. These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 2 & PRO SE ASSIGNMENT OF ERROR NO. 2
In these assignments of error, defendant complains that the State failed to *835 present sufficient evidence that he was a second felony offender. He argues that because the record does not contain any documentation pertaining to the predicate offense, the evidence was insufficient to support the multiple offender adjudication.
There is no merit to this claim. Although the record does not contain any documentation pertaining to the predicate conviction, such documents were introduced into evidence as shown by the transcript of the multiple bill hearing. At the hearing, defendant testified that he did not recall being advised of his rights when he pleaded guilty to the predicate offense; but, he was shown the guilty plea form which defendant admitted he read, initialed, and signed. He also admitted that he understood that he was waiving his rights. After the trial court found that the State met its burden of proof and that defendant was a second felony offender, defense counsel stated that he had no objection. The lack of an objection to the adjudication and the failure to file a written response to the multiple bill as required by La.R.S. 15:529.1(D)(1)(b) precludes appellate review of defendant's claim that the documentary evidence was insufficient. State v. Cossee, 95-2218 (La. App. 4 Cir. 7/24/96), 678 So.2d 72. Because appellate review of this issue is precluded, the lack of documentation in the record is moot. These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 3 & 4 AND PRO SE ASSIGNMENTS OF ERROR NOS. 3 & 4
In these assignments of error, defendant complains that the trial court erred in failing to specify reasons for the sentence as required by La. C.Cr.P. art. 894.1 and in imposing an excessive sentence. A review of the sentencing transcript shows that no objection was made to the sentence, and there is no motion for reconsideration of sentence in the record. La. C.Cr.P. art. 881.1(D) provides that the failure to file a motion for reconsideration of sentence precludes defendant from raising any claims about his sentence on appeal. See also State v. Martin, 97-0319 (La.App. 4 Cir. 10/1/97), 700 So.2d 1322. These assignments of error are without merit.

PRO SE ASSIGNMENT OF ERROR NO. 5
In this pro se assignment of error, defendant complains that he received ineffective assistance of counsel. He argues that his counsel should have moved for a mistrial based on the prejudicial comments about religion made by the prosecutor in his cross-examination of John Lacen and Everett Harris.
Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Kelly, 92-2446 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, writ denied 94-2087 (La.1/6/95), 648 So.2d 921. The present record is sufficient to evaluate the merits of defendant's claim.
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced him. With regard to counsel's performance, the defendant must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e. a trial whose result is reliable. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant's conviction resulted from a *836 breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland requirements has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989), writ denied 559 So.2d 1374 (La. 1990). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5th Cir.1984).
If an error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, hindsight is not the proper perspective for judging the competence of counsel's decisions because opinions may differ as to the advisability of a tactic; and, an attorney's level of representation may not be determined by whether a particular strategy is successful. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The complained-of comments made by the prosecutor occurred during the cross-examination of two defense witnesses, John Lacen and Everett Harris. Lacen was asked why the jury should believe him when he was a convicted felon; and, he replied that he had reformed his life and was a Christian. When Lacen was asked about how he became involved in the case, he stated that he had spoken with defendant's wife; and, the following then transpired:
Q. So, you don't think he committed this armed robbery, do you?
A. Well, I don'tfrom what I've been told, the facts I have of this case; no, he didn't.
Q. You're a Christian, brother.
A. Yes, I am.
Q. This is your big
A. Yes, I am.
MR. WILLIAMS:
Objection, Judge.
THE COURT:
Sustained.
EXAMINATION BY MR. BURNS:
Q. This is your big chance to say he didn't do it. You're a Christian.
A. I am.
MR. WILLIAMS:
Objection, Judge.
THE WITNESS:
I am.
THE COURT:
Hold it! Hold it! When there is an objection, everybody quit talking. Alright! And that includes the witness.
THE WITNESS:
Yes, sir.
THE COURT:
His opinion as to whether or not he did it or not is not relevant to this case. We have Jurors here that are selected by the State and the Defense who will make that decision. What his opinion is, I don't care about. What your opinion is, I don't care about. What his opinion is, I don't care about. So ask another question, please.
During the cross-examination of Everett Harris, the following transpired:
Q. So why should these people believe you, you're a convicted felon?
A. Because I'm a Christian also.
Q. Really!
A. Yes, I am.
Q. You weren't christian [sic] with a rock in your hand, did [sic] you?
A. What rock?
MR. WILLIAMS:
Objection, Judge.
THE COURT:
Objection, overruled.
EXAMINATION BY MR. BURNS:
Q. I'm going to ask you again; you weren't christian [sic] when you had that rock in your hand, were you?
A. Yes, I was.

*837 Q. Really?
A. Yes, I was.
Q. Look at these thirteen people and tell them Christians do dope!
MR. WILLIAMS:
Objection, Judge.
THE COURT:
Sustained. You want to approach for a second, Mr. Burns?
Defendant argues that his counsel was ineffective because he should have moved for a mistrial pursuant to La. C.Cr.P. art. 770(1) which provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
Although the prosecutor's remarks in question referred to the two witnesses' being Christians, it was the witnesses themselves who first brought up the fact of their being Christians. The prosecutor's remarks do not appear to have been an attempt to create religious prejudice against defendant in the mind of the jury, but were apparently calculated to challenge Lacen's and Harris's claims of credibility due to their being Christians. Therefore, defendant did not receive ineffective assistance of counsel because his attorney did not move for a mistrial pursuant to Article 770(1). This assignment of error is without merit.
For the foregoing reasons, the defendant's conviction and sentence are hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Officer Mitchell testified that the search was conducted pursuant to a "Consent to Search" obtained from Ms. Robinson. Later in the trial she took the stand under the name "Robinette Weaver." She testified that she was currently married to the defendant and had been his wife for five years. The record does not explain why Officer Mitchell ascribed to her the last name of "Robinson", but there is no doubt that Robinette Weaver and Robinette Robinson are one and the same person.
[2] Officer Mitchell referred to the clipping as a "police blotter."
[3] Officer Mitchell admitted on cross-examination that there were other newspaper articles in the suitcase, but stated that they were in a part of the suitcase separate from the pawn ticket that is the subject of this prosecution. He did not read any of the other newspaper articles to see if they might refer to other crimes, which does seem somewhat peculiar. At trial it was shown that some of the other clippings referred to crimes that had no relationship to the defendant.