PATRICIA RIVET MURRAY, Judge.
 

 11 The defendant, Brennan Stallworth, appeals his conviction and sentence for purse snatching. For the reasons that follow, we affirm.
 

 STATEMENT OF THE CASE
 

 On January 29, 2008, the State filed a bill of information charging Brennan Stall-worth with purse snatching in violation of La. R.S. 14:65.1. The defendant pled not guilty at arraignment on February 11, 2008. Subsequently, the trial court found probable cause and denied the defendant’s motions to suppress the identification and the evidence.
 

 On June 3, 2008, the case was tried before a jury, and the defendant was found guilty as charged. The defendant timely filed a motion for new trial, which was denied. After the defendant waived any delays, the trial court sentenced him to six years at hard labor in the custody of the Department of Corrections. This appeal, in which Mr. Stallworth alleges he was denied effective assistance of counsel, followed.
 

 FACTS
 

 Ryan Schwartz testified at trial that on November 27, 2007, he was working late at the Rendezvous Tavern when at approximately 3:30 a.m. he heard a loud banging and screaming at the front door. He looked through the window and |2observed a young woman, later identified as Jennifer Pinson. He let her in. Although she was hysterical and sobbing uncontrollably, Mr. Schwartz was able to learn her name and to gather enough information to determine that the police should be called.
 

 
 *543
 
 Mr. Schwartz explained that the business was equipped with a surveillance system with cameras located both inside and outside the tavern. He showed the first officers who arrived the surveillance footage captured from outside the bar.
 

 Officer Lester testified that he was the first officer to report to the scene. Initially, he observed that Ms. Pinson was distraught and crying. After she had calmed down, she related that she had been robbed of her purse by an unknown black male. Ms. Pinson stated that the subject had approached her for a cigarette and then had come from behind her and grabbed her purse. She resisted and held onto her purse. As the subject pulled on the purse, Ms. Pinson fell to the ground and was dragged along some distance. The subject then began hitting and kicking her, and threatened her until she relinquished her property. The subject then got into a white, four-door automobile, which Ms. Pinson believed to be a Pontiac Grand Am and fled north on Eighth Street. Officer Lester testified that the victim was unable to provide a clothing description of the perpetrator at that time.
 

 Sgt. Jeffrey Walls testified that after the incident, he met with the owner of the Rendezvous Tavern, who provided him with a copy of the surveillance video on two compact disks. Sgt. Walls gave the disks to Det. Matthew McCleary, who was in charge of the investigation.
 

 Det. McCleary testified that after he had an opportunity to review the surveillance video, he met with the victim at her residence on the afternoon of the robbery. At that point, Ms. Pinson was able to provide a description of the | (¡perpetrator. Sgt. Walls photographed the victim’s injuries, which included a cut on her right forearm and some bruising on her shoulder.
 

 Subsequently, Det. McCleary developed Brennan Stallworth as a suspect in the case and compiled a photographic lineup. Det. McCleary met with the victim on December 5th at her residence and asked her to go over the incident again in her head before he showed her the lineup. Ms. Pinson reviewed the lineup and identified Mr. Stallworth as the perpetrator. Det. McCleary had Ms. Pinson document her identification by dating and signing the lineup along with the number photograph she identified.
 

 As a result of Ms. Pinson’s identification, Det. McCleary prepared an arrest warrant for Brennan Stallworth. On December 6, 2007, Mr. Stallworth was arrested in a white Buick Skylark. At that time, Det. McCleary recovered from Mr. Stallworth’s person a black jacket that matched the description given by Ms. Pinson of the perpetrator’s clothing, and that also was consistent with what was captured on the surveillance tape. In addition, Det. McCleary photographed the Buick, which was registered to Mr. Stallworth.
 

 Det. McCleary further testified that he was able to develop Mr. Stallworth as a suspect primarily through a prior purse snatching that had occurred in another part of town on November 23, 2007. In that incident, the victim had been able to provide a license plate number, which corresponded to a white Buick Skylark that was registered to Mr. Stallworth. According to Det. McCleary, Mr. Stallworth also matched the description of the perpetrator in the November 23rd incident. However, the victim in that incident did not identify Brennan Stallworth when she was shown a photographic lineup containing his picture.
 

 4Pet. McCleary also related that at the time Brennan Stallworth was arrested during a traffic stop, his brother, Cinque Stall-worth, was also in the vehicle. To Det. McCleary’s knowledge, a photo of Cinque
 
 *544
 
 Stallworth was then placed into photographic lineup shown to the victim of the November 23rd incident, who positively identified him. Ms. Pinson, however, was never shown a lineup containing a photo of Cinque Stallworth. Det. MeCleary stated, that when interviewed by him, Ms. Pinson had indicated that the driver of the getaway car was a woman.
 

 Jennifer Pinson testified that on November 27, 2007, she had been at her boyfriend’s house and had left the apartment at approximately 3:00 a.m. to get a pack of cigarettes at Walgreens. She was walking down Magazine Street when she was approached by a man who asked her for a cigarette. She told him that she did not have any, kept walking, and crossed the street, at which point she was attacked from behind by the same person. He dragged her back across the street by her purse, which she refused to relinquish.
 

 The perpetrator was struggling for her purse, which was around her arm, and Ms. Pinson was fighting back and screaming. The perpetrator put his hand around her throat and then over her mouth in an attempt to get her to shut up. The perpetrator then asked Ms. Pinson if she wanted to live. She said
 
 “yes,”
 
 and just gave up. The perpetrator took Ms. Pinson’s purse, got into a white car that was parked right beside where Ms. Pinson was lying, and drove off.
 

 Ms. Pinson got up, ran to the Rendezvous Tavern across the street, and started banging on the door until the bartender let her in. Hysterical at this point, Ms. Pin-son briefly told the bartender what had happened and asked him to call the police.
 

 [ ¡¡Eventually, the police arrived, and Ms. Pinson gave the officer a general description of the perpetrator. Later, when she was much calmer, she met with Det. MeCleary and provided a more thorough description. Some days later, Det. MeCleary presented her with a photographic lineup. After reviewing the events in her mind, Ms. Pinson examined the lineup and made a positive identification of Brennan Stallworth.
 

 At trial, Ms. Pinson identified the jacket recovered by Det. MeCleary as the jacket worn by the perpetrator. Ms. Pinson also examined the photograph taken of Brennan Stallworth’s car and stated that it appeared to be the same white car she remembered him driving off in.
 

 At this point, the Rendevous Tavern surveillance video was played for the jury while Ms. Pinson narrated the events.
 

 ERRORS PATENT
 

 A
 
 review of the record for errors patent reveals none.
 

 ASSIGNMENT OF ERROR
 

 The defendant’s sole assignment of error is that he received ineffective assistance of counsel, primarily because his counsel was unprepared for trial. The defendant’s motion for new trial was supported by an affidavit of his trial counsel, Clark Beljean, in which he asserted that he had been unable to adequately prepare a defense on the merits of the case prior to the June 3, 2008 trial because he had not received a transcript of the victim’s motion hearing until the afternoon of June 2, 2008, and because he had a large caseload.
 

 Mr. Beljean also testified at the hearing on the defendant’s motion for new trial. At the hearing Mr. Beljean stated that he had not anticipated that the case would actually be tried June 3, 2008. He had believed that the trial date had been | nset simply as a measure to “force the case to move along.” It was Mr. Beljean’s understanding that because the victim was a traveling nurse, the setting of the defendant’s motions hearing on June 2nd and trial on June 3rd was done to ensure the
 
 *545
 
 victim’s appearance for the motions hearing, at which time the trial date would be continued. However, according to Mr. Beljean he learned on June 2nd that the State had flown the victim in to testify and that the trial was scheduled to proceed on June 3rd. Mr. Beljean testified that he could not recall whether he had requested a continuance of the trial; the record does not show that the defendant moved to continue the June 3rd trial date. Asked whether he felt prepared to go to trial, Mr. Beljean stated he felt as prepared as he could be, “having to go to trial the day following the testimony with the alleged victim.”
 

 Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted.
 
 State v. Prudholm,
 
 446 So.2d 729, 737 (La.1984);
 
 State v. Reed,
 
 483 So.2d 1278, 1280 (La.App. 4th Cir.1986). However, where the appeal record discloses sufficient evidence upon which to make a determination of counsel’s effectiveness, such decision may be made on appeal in the interest of judicial economy.
 
 State v. Seiss,
 
 428 So.2d 444, 448 (La.1983).
 

 A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 State v. Fuller,
 
 454 So.2d 119, 125 (La.1984). Under the
 
 Strickland
 
 test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense.
 
 7Strickland v. Washington,
 
 466 U.S. at 687, 104 S.Ct. at 2064. This burden requires a showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 Id.
 
 The defendant must also show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 Strickland v. Washington,
 
 466 U.S. at 694, 104 S.Ct. at 2068.
 

 Both showings must be made before it can be found that the defendant’s conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable.
 
 Id.,
 
 466 U.S. at 687, 104 S.Ct. at 2064. A claim of ineffective assistance may be disposed of on the finding that either of the
 
 Strickland
 
 requirements has not been met.
 
 State v. James,
 
 555 So.2d 519, 524 (La.App. 4th Cir.1989). If the claim fails to establish either prong, the reviewing court need not address the other.
 
 State v. Weaver,
 
 99-2376, p. 8 (La.App. 4 Cir. 9/27/00), 770 So.2d 831, 836.
 

 A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
 
 Strickland v. Washington,
 
 466 U.S. at 689, 104 S.Ct. at 2065.
 

 If an alleged error falls “within the ambit of trial strategy, it does not establish ineffective assistance of counsel.”
 
 State v. Bienemy,
 
 483 So.2d 1105, 1107 (La.App. 4th Cir.1986). Moreover, “[wjhile opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of | ¿representation be determined by whether a particular strategy is successful.”
 
 State v. Brooks,
 
 505 So.2d
 
 *546
 
 714, 724 (La.1987),
 
 cert. denied,
 
 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363(1987).
 

 As he did at the motion for new trial, the defendant on appeal bases his claim of ineffective assistance upon Mr. Beljean’s assertion that he was unable to adequately prepare a defense on the merits because of the expedited handling of the case, specifically the fact that he was only able to obtain a transcript of Ms. Pinson’s testimony on the afternoon before trial.
 

 As noted by the State, Mr. Beljean commenced his representation of the defendant in February, four months prior to trial, when he appeared on the defendant’s behalf at his arraignment. Moreover, Det. McCleary testified at the April 11, 2008 motion hearing, which was then continued until June 2nd to await the victim’s appearance, regarding the events that led to the defendant’s arrest. This testimony necessarily included Ms. Pinson’s account of the attack as documented in the arrest warrant and police report
 

 The defendant does not suggest that Ms. Pinson’s testimony revealed any avenues of investigation that defense counsel was unable to pursue because of a lack of time; nor does the defendant suggest how the outcome of his trial might have been affected had Mr. Beljean had more time to prepare a defense. Defendant does not specifically identify any potential witnesses or exculpatory evidence that Mr. Beljean was unable to uncover because he had insufficient time to prepare for trial. In the absence of such specifics, Mr. Stall-worth’s general assertion that his trial counsel was unprepared is insufficient to satisfy the two-pronged
 
 Strickland
 
 test for establishing ineffective assistance of counsel.
 

 |9In addition to the general contention that his trial counsel lacked sufficient time to prepare for trial, Mr. Stallworth argues that his counsel committed several specific errors at trial. According to the defendant, the most egregious error committed by defense counsel occurred during his cross-examination of Det. McCleary. Up until that point, the jury had been told simply that Det. McCleary had developed the defendant as a suspect, without hearing any of the facts responsible for his making that determination. However, during cross-examination of Det. McCleary, defense counsel brought out that the defendant had become a suspect as a result of his vehicle being identified from an earlier purse snatching. The defendant contends that this information suggesting his possible participation in another robbery was damaging.
 

 Although the defendant argues that his counsel essentially blundered down this path of questioning without realizing the potential negative impact it would have, the record reflects otherwise. The record shows that the defendant’s trial counsel consciously elicited this testimony as an element of his defense, which was to raise doubt in the minds of the jurors by suggesting that Cinque Stallworth, the defendant’s brother, might have committed the crime rather than the defendant. Accordingly, we conclude that this conduct, which the defendant labels as deficient performance, falls within the ambit of trial strategy-
 

 14] Defendant also contends that Mr. Beljean was deficient in failing to object to the hearsay testimony of Officer Lester that Jennifer Pinson had described the getaway vehicle as a white Pontiac Grand Am; whereas, during Ms. Pinson’s own testimony, she described the vehicle simply as a white car. Accordingly, defendant contends that but for Officer Lester’s hearsay testimony, the important fact that Ms. ImPinson’s description of the vehicle
 
 *547
 
 closely matched that of the defendant’s own Buick would not have been revealed.
 

 Like the defendant’s prior argument, his claim concerning his counsel’s failure to object to hearsay testimony from Officer Lester also falls within the ambit of trial strategy as it was important to link the vehicle described by Ms. Pinson to the prior purse snatching in which Cinque Stallworth was identified as the perpetrator.
 

 The defendant further argues that his counsel erred during his cross-examination of Ms. Pinson. Specifically, the defendant argues that on direct examination, Ms. Pinson did not describe the physical characteristics of her attacker, stating only that he had worn a dark jacket and plaid shirt. During cross examination, however, Ms. Pinson testified that her assailant was approximately six feet tall and had a dark complexion. Therefore, defendant argues that this information would not have come out if Mr. Beljean had not cross-examined Ms. Pinson. However, we find that defense counsel’s decision to cross-examine Ms. Pinson falls within the ambit of trial strategy.
 

 With regard to what constitutes ineffective assistance, the jurisprudence reflects that it is not enough to show that some, or even most, defense lawyers would have handled the case differently. As the Supreme Court has observed: “It is all too tempting for a defendant to second-guess counsel’s assistance after conviction.”
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. at 2065. It is likewise “all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.” Id. The choice of what defense to employ is perhaps the hallmark of the type of act for which
 
 Strickland
 
 requires that judicial scrutiny be highly deferential and for which j^there is a strong presumption that the decision was a function of reasonable professional judgment. Accordingly, we decline to overturn the defendant’s conviction on this basis.
 

 Lastly, the defendant argues that his trial counsel failed to request either a mistrial or admonition after a reference to his post-arrest silence in contravention of the rule established in
 
 Doyle v. Ohio,
 
 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). On direct examination, Det. McCleary testified as follows:
 

 I did meet him at the location he was arrested at, advised him of his rights and attempted to question him, which he didn’t want to speak to me.
 

 In
 
 Doyle v. Ohio,
 
 the United States Supreme Court addressed the issue of whether a prosecutor could seek to impeach a defendant’s exculpatory account, offered for the first time at trial, through his failure to offer the statement at the time of his arrest after receiving
 
 Miranda
 
 warnings. The Court held that the use, for impeachment purposes, of a defendant’s silence after receiving
 
 Miranda
 
 warnings at the time of arrest, violates the Due Process Clause of the Fourteenth Amendment. 426 U.S. at 618-619, 96 S.Ct. at 2245.
 

 In
 
 State v. George,
 
 95-0110 (La.10/16/95), 661 So.2d 975, the prosecutor questioned the arresting officer as to whether the defendant had been read his rights after he was arrested, and then elicited testimony from the officer establishing that the defendant did not make any statements. Defense counsel objected to the initial inquiry and then moved for a mistrial after the prosecutor established the defendant’s post-arrest silence. The trial court denied the motion for mistrial but admonished the jury not to hold the fact that the defendant chose to remain silent against him in any manner. The
 
 *548
 
 defendant had offered an alibi defense at trial. The Court found no reversible error because there was no | ^indication of an attempt by the prosecutor to “ascribe a guilty meaning” or “affirmatively exploit the testimony to impeach the defendant’s exculpatory account offered at trial.”
 
 Id.,
 
 p. 9, 661 So.2d at 980.
 

 Although the instant case involves an explicit mention of the defendant’s post-arrest silence, there is no indication of an attempt to either ascribe a guilty meaning or affirmatively exploit the testimony to impeach the defendant’s exculpatory account offered at trial. Rather, the officer’s statement appears to be a simple “description of how the police investigation culminated in the formal arrest of the defendant with the routine incidents of custody, e.g., the reading of
 
 Miranda
 
 warnings to the person arrested.”
 
 Id.,
 
 p. 10, 661 So.2d at 980. Although unnecessary, Det. McCleary’s statement did not provide a basis for a mistrial, and counsel’s decision not to request an admonition was a legitimate exercise of trial strategy.
 
 State v. Spears,
 
 94-0327, pp. 8-9 (La.App. 4 Cir. 12/15/94), 647 So.2d 1313, 1317.
 

 Accordingly, we find that the defendant has failed to meet his burden of establishing ineffective assistance of counsel, and we reject this assignment of error.
 

 CONCLUSION
 

 We affirm the defendant’s conviction and sentence.
 

 AFFIRMED.