ROLAND L. BELSOME, Judge.
| iThis is defendant’s appeal from his conviction for purse snatching based on claims for ineffective assistance of counsel. Considering the following, the conviction is affirmed.

PROCEDURAL HISTORY

On March 27, 2008, the defendant, Gregory Skipper, was charged by bill of information [1] with one count of purse snatching in violation of La. R.S. 14:65.1. The defendant pled not guilty at his arraignment on April 7, 2008. On May 9, 2008, the trial court found probable cause for the charge and denied the defendant’s motion to suppress identification. On July 7, 2008, the State filed a notice of Brady[2] material. On March 13, 2009, the defendant entered a guilty plea to the charged offense. However, he withdrew his plea on April 17, 2009. The defendant’s first trial on April 26, 2010, resulted in a mistrial. After a jury trial on May 17, 2010, the defendant was found guilty as charged. On July 29, 2010, the 12trial court sentenced him to serve ten years at hard labor, giving credit for time served.
On November 16, 2010, the defendant pled guilty to a multiple bill of information and was adjudicated a third felony offender. On the same date, the defendant waived all delays, and the trial court sentenced him to serve fifteen years at hard *540 labor concurrent with any other sentence, giving credit for time served.
This appeal follows.[3]

FACTS

On the evening of January 31, 2008, the victim, Tanika Kelly, drove to the Pick and Go convenience store on Magazine Street to purchase some water. While in the store, she observed the defendant. Before checking out, the victim was informed that she had to pay in cash so she went to the ATM machine in the store and withdrew $100.00.
After completing her purchase, the victim drove back to her apartment on Camp Street. She parked her car on a side street, collected her things, exited her vehicle, and began walking towards her apartment. At that point, the defendant, whom she had recognized from the convenience store, approached her in his vehicle and asked for directions. The defendant then got out of his vehicle, walked towards the victim, who was backing up, and pulled her purse off her shoulder. The victim immediately started screaming while the defendant returned to his vehicle and drove off. Several of the victim’s neighbors came out of their apartments, and one of them called the police.
| sDetective Jerry Baldwin of the New Orleans Police Department’s Second District Person’s Crime Unit was assigned the case. Detective Baldwin met with the victim, who provided a statement regarding the incident. After taking the victim’s statement, in which she advised that her cellular phone was inside of her purse when it was taken, Detective Baldwin suggested that she check her phone records to ascertain whether her phone had been used. On the day after the incident, the victim noticed that several calls had been made to an unfamiliar number after her phone was taken. She reported this information to Detective Baldwin and provided him with a copy of her phone records. After placing a call to the unknown number, Detective Baldwin learned that the defendant was the person who had called from the victim’s phone. The victim subsequently observed the defendant in a surveillance video obtained from the convenience store by responding officers, then, she identified him in a six-person photographic lineup. As a result, an arrest warrant was obtained.
At trial, the victim positively identified defendant as the person who took her purse.

ERRORS PATENT

A review of the record reveals no errors patent.

DISCUSSION

On appeal, defendant contends that his trial counsel was ineffective for two reasons: 1) failing to object to hearsay testimony that implicated him in this crime; and 2) for failing to re-urge the motion to suppress the identification on the basis that the victim viewed the surveillance tape prior to identifying him in the photographic lineup.
|,)The preferred procedure for addressing claims of ineffective assistance of counsel is a post-conviction proceeding in the trial court, not on appeal. State v. Watson, 2000-1580, p. 4 (La.5/14/02), 817 So.2d 81, 84 (citing State v. Deloch, 380 So.2d 67, 68 (La.1980)). Raising the issue in a post-conviction procedure provides for a full evidentiary hearing to be conducted to explore the issue. Id. (citing State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168, 173); Deloch, supra. However, where the appeal record discloses sufficient evidence upon which to make a determination of *541 counsel’s effectiveness, such decision may be made on appeal in the interest of judicial economy. State v. Seiss, 428 So.2d 444, 449 (La.1983).
For a defendant to be successful in a claim of ineffective assistance of counsel, he must show that counsel’s performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel’s performance is considered ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Id. Likewise, counsel’s deficient performance will have prejudiced the defendant if the errors were so serious as to deprive the defendant of a fair trial. Id. To carry this burden, a defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. This Court has recognized that a defendant must make both showings to establish that counsel was so ineffective as to require reversal. State v. Jenkins, 2009-1551, pp. 4-5 (La.App. 4 Cir. 6/30/10), 45 So.Sd 173, 176. (citation omitted).
In his first assignment of error, defendant argues that his trial counsel was ineffective for faffing to object to hearsay testimony elicited from Detective Baldwin regarding an unknown woman’s statement linking defendant to the victim’s stolen cell phone. He further argues that counsel’s deficient performance prejudiced him.
Defendant acknowledges that courts have found that such information may be admissible to show steps taken in an investigation; however, he insists that the evidence was admitted to prove the truth of the matter asserted and violated his right to confrontation. We disagree.
In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Court held that the admission of “testimonial” hearsay evidence violates the Sixth Amendment’s confrontation clause. Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, when the statement is being offered as an assertion to show the truth of matters asserted therein, and thus rests for its value upon the credibility of the out-of-court asserter. La. C.E. article 801(C); State v. Martin, 356 So.2d 1370, 1373-74 (La.1978). (citation omitted). One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross-examine the absent de-clarant to test the accuracy and completeness of the testimony. The declarant is also not under oath at the time of the statement. Moreover, the confrontation clause of the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him”. U.S. Const amend. VI; State v. Wille, 559 So.2d 1321, 1329 (La.1990).
|fiIn certain circumstances, the testimony of a police officer may encompass information provided by another individual without constituting hearsay if offered to explain the course of the police investigation and the steps leading to the defendant’s arrest. State v. Cyrus, 11-KA-1175, (La.App. 4 Cir. 7/5/12), 97 So.3d 554, 565-66, (citing State v. Smith, 400 So.2d 587, 591 (La.1981); State v. Calloway, 324 So.2d 801, 809 (La.1976); State v. Monk, 315 So.2d 727, 740 (La.1975)). However, the Louisiana Supreme Court has warned that the State should not be allowed to use an officer as a “passkey” to present inad *542 missible hearsay evidence to the jury in the guise of “explaining police actions.” Id. (citing State v. Hearold, 603 So.2d 731, 737 (La.1992); State v. Broadway, 96-2659, p. 8 (La.10/19/99), 753 So.2d 801, 809; Wille, 559 So.2d at 1331).
On direct examination, Detective Baldwin testified that after taking the victim’s statement, he asked her to check her phone records for any activity. When the victim noticed that phone calls were made after the robbery, she gave Detective Baldwin the information. After receiving the number that was dialed, he called it and spoke to the owner, from whom he learned that defendant had called the number from the victim’s phone. Detective Baldwin then proceeded to compile a six-person photo lineup, which included the defendant. The victim positively identified the defendant from that lineup.
After defendant was named as the caller, he was included in a photographic lineup and identified by the victim. Thus the out-of-court statement was offered to show how the defendant was developed as a suspect in the purse snatching and why he was included in the photo-lineup. Accordingly, the testimony was not hearsay. See Cyrus, supra.
|7Pefendant cites to Detective Baldwin’s testimony on cross-examination to support the conclusion that the statement was offered to prove the truth of the matter asserted. He further urges that the error was compounded when defense counsel repeatedly questioned Detective Baldwin on this issue, drawing more attention to the inadmissible statement.
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065. If an alleged error falls “within the ambit of trial strategy,” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). (citations omitted). Moreover, “[w]hile opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987).
The testimony on cross-examination began as an explanation of how the detective developed the defendant as a suspect. Detective Baldwin explained that, in her statement, the victim described the assailant as a light-skinned, short black male wearing a red baseball cap and eyeglasses. However, he admitted that the complete details were not included in his report. He also explained that an arrest warrant was secured after the victim identified the defendant in a lineup. Later, Detective Baldwin was asked if he had “anything further that would identify [defendant],” other than the victim’s description of the assailant.” |sAt that point, Detective Baldwin asserted “the fact that he [defendant] used her cell phone right after the robbery.” When asked what proof he had of the fact that defendant used the cell phone, Detective Baldwin stated that he had the cell phone records and the interview that he conducted with the owner of the phone that the defendant called. Then the following exchange took place.
Defense: That would indicate that someone called from that phone, correct?
Baldwin: Shortly after the robbery. Yes.
*543 Defense: And that would also establish that you have a phone number that someone called, correct?
Baldwin: Yes.
Defense: Okay. You have no proof that [the defendant] was the one who in fact made that phone call, that you know first hand [sic]? Correct?
Baldwin: I do have proof, sir.
Defense: I am going to ask a very direct question.
Baldwin: Okay.
Defense: Other than what you may have been told, you have no proof that [defendant] made that call from the alleged victim’s phone, do you?
Baldwin: From the phone records and also the person that I have contacted on the phone.
Defense: Other than what you were told?
Baldwin: That’s it.
Defense: Correct?
Baldwin: Yes.
Defense counsel quickly ended questioning after Detective Baldwin admitted that he did not have first-hand information identifying the defendant, and the victim was the only person to identify the defendant.
In State v. Stallworth, 2008-1389 (La.App. 4 Cir. 4/29/09), 11 So.3d 541, writ denied, 09-1186 (La.1/29/10), 25 So.3d 829, the defendant argued that his trial counsel was ineffective in his cross-examination of the investigating detective, during which it was brought out that the defendant had become a suspect as a result of his vehicle being identified from a prior purse snatching. This Court found defendant’s argument without merit, noting that trial counsel’s questioning could have been trial strategy in an effort to suggest that the defendant’s brother was the person who committed the crime.
The record shows that the defendant’s trial counsel consciously elicited this testimony as an element of his defense, which was to raise doubt in the minds of the jurors by suggesting that Cinque Stallworth, the defendant’s brother, might have committed the crime rather than the defendant. Accordingly, we conclude that this conduct, which the defendant labels as deficient performance, falls within the ambit of trial strategy.
Defendant also contends that Mr. Belje-an was deficient in failing to object to the hearsay testimony of Officer Lester that Jennifer Pinson had described the getaway vehicle as a white Pontiac Grand Am; whereas, during Ms. Pin-son’s own testimony, she described the vehicle simply as a white car. Accordingly, defendant contends that but for Officer Lester’s hearsay testimony, the important fact that Ms. Pinson’s description of the vehicle closely matched that of the defendant’s own Buick would not have been revealed.
Like the defendant’s prior argument, his claim concerning his counsel’s failure to object to hearsay testimony from Officer Lester also falls within the ambit of trial strategy as it was important to link the vehicle described by Ms. Pinson to the prior purse snatching in which Cinque Stallworth was identified as the perpetrator.
Stallworth, pp. 9-10, 11 So.3d at 546-47.
Likewise, in the present case, defense counsel’s failure to object to the hearsay testimony by Detective Baldwin falls within the ambit of trial strategy. Detective Baldwin’s statements on cross-examination were in response to defense counsel’s questioning and were explaining his actions in identifying defendant as a |insuspect. Here, defense counsel was at *544 tempting to weaken the State’s case by-showing that the only information about the defendant’s identity came secondhand, from an unknown person who answered a phone which had been called from the victim’s phone. Trial counsel was attempting to emphasize a weakness in the State’s case, and as soon as his purpose was accomplished, he quickly concluded his questioning. As such, trial counsel’s failure to object did not constitute ineffective assistance of counsel.
Regardless, any perceived deficiency in counsel’s performance did not prejudice defendant.
The erroneous admission of hearsay and irrelevant evidence does not require a reversal of defendant’s conviction when the error was harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421, 426-27 (La.1980).
In Wille, supra, the Louisiana Supreme Court found that testimony by an FBI agent as to what two witnesses/accomplices said that led him to the defendant as the perpetrator of a brutal rape and murder of an eight-year-old girl violated the defendant’s confrontation rights. However, the court further found the error harmless, stating:
As the reviewing court, we conclude there is no reasonable possibility that Agent Harvey’s erroneously admitted testimony, which conveyed undetailed information that two accomplices had named defendant as the perpetrator, contributed to the verdict. The error was harmless beyond a reasonable doubt.
Wille, 559 So.2d at 1333.
| n Likewise, the victim in the instant case had two opportunities to view the defendant in well-lit areas, and she immediately identified defendant as the assailant in the lineup and at trial. There is no reasonable possibility that Detective Baldwin’s testimony contributed to the verdict. As such, any perceived error was harmless beyond a reasonable doubt. Thus, defendant was not prejudiced by counsel’s failure to object.
The defendant has failed to show that trial counsel’s performance was deficient, and that any perceived deficiency was prejudicial.
In his second assignment of error, the defendant contends that his trial counsel was ineffective for failing to re-urge the motion to suppress identification on the basis that the victim viewed the surveillance tape prior to identifying him in the photographic lineup.
The defendant has the burden of proof on a motion to suppress an out-of-court identification. La.C.Cr.P. art. 703(D). To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proven by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738; State v. Thibodeaux, 98-1673, p. 21 (La.9/8/99), 750 So.2d 916, 932.
The United States Supreme Court held in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), that *545 despite the existence of a suggestive | igpretrial identification, an identification may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Manson established five factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of mis-identification: 1) the witness’ opportunity to view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Id., 432 U.S. at 114-15, 97 S.Ct. at 2253.
However, a defendant must make a threshold showing that an identification is suggestive before the reliability of the identification becomes relevant. Cyrus, 97 So.3d at 560. In an attempt to meet this burden, the defendant argues that showing the victim a video containing a suspect prior to showing her the lineup, with the same suspect, is suggestive.
Yet, defendant fails to recognize that the only reason a videotape from the convenience store was secured was because the victim informed the police that she had observed her assailant inside the store, before the incident occurred. Upon showing the -victim the videotape, she identified the defendant. Therefore, the viewing resulted in an independent identification of the defendant, rather than a suggestion as to whom to identify in the subsequent photographic lineup.
In the case at bar, even if the viewing of the surveillance tape was suggestive, the defendant has not shown that there was a substantial likelihood of misidentification in the photographic lineup identification. The victim testified that she saw the defendant in the well-lit convenience store and that he was standing near the counter when she paid for her purchases. The victim further | ^stated that she recognized the defendant as the person from the convenience store when he approached her in his vehicle, near her apartment, which was also in a well-lit area. The victim had sufficient time to observe the defendant before and during the incident. Additionally, the victim provided the police with a physical and clothing description of the defendant. The victim identified the defendant in the photographic lineup within a few days of the incident. Thus, there was no basis to support the re-urging of the motion to suppress.
Notably, the defendant was represented by two other attorneys between the time the State provided information about the surveillance tape and the time trial counsel re-enrolled as counsel. Neither of those two attorneys sought to re-urge the motion to suppress on the basis of the viewing of the surveillance tape.
Considering the foregoing, we find that the defendant has failed to meet his burden of establishing ineffective assistance of counsel. Accordingly, the defendant’s conviction is affirmed.
AFFIRMED

. The docket master contains a clerical error, which inaccurately reflects that the bill of information was filed on March 27, 2005.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Here, the State made the defense aware that the victim viewed a convenience store video surveillance tape prior to being presented with a six-person photographic lineup, containing the defendant.

. The trial court granted defendant an out of time appeal on May 2, 2011.