STATE OF LOUISIANA     *     NO. 2019-KA-0186

VERSUS     *

    COURT OF APPEAL

TRAE WILLIAMS     *

    FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 522-053, SECTION "D"
Honorable Paul A Bonin, Judge
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins)

*LOBRANO, J., DISSENTS WITH REASONS*

*JENKINS, J., CONCURS IN THE RESULT*

Leon Cannizzaro
District Attorney
Kyle Daly
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

    COUNSEL FOR STATE OF LOUISIANA

Meghan Harwell Bitoun
Louisiana Appellate Project
P. O. Box 4252
New Orleans, LA 70119

    COUNSEL FOR APPELLANT

**REVERSED**

**SEPTEMBER 25, 2019**

This appeal is from a manslaughter conviction. After review of the record in light of the applicable law and arguments of the parties, the defendant's conviction is reversed.

***Relevant Procedural History***

The defendant, Trae Williams, was charged on October 2, 2014, with the second-degree murder of Eddie Salvant, III. The defendant pleaded not guilty at his arraignment on October 15, 2014. The defendant's motions to suppress the identification, statement, and evidence were denied on October 21, 2015.

The jury was unable to reach a verdict in the defendant's first trial and ended in a mistrial on June 14, 2017. At his second trial, which began on April 23, 2018, the jury returned a responsive verdict on April 24, 2018, by a 10-2 vote. The defendant's motions for new trial and for post-verdict judgment of acquittal were denied and, after being adjudicating a second-felony offender on July 27, 2018,[1] he was sentenced to sixty years at hard labor. On September 20, 2018, the district

---

[1] The defendant pleaded guilty on October 21, 2011, to illegally carrying a weapon, possession with intent to distribute cocaine, possession of marijuana 3rd offense and possession of schedule IV drugs in case no. 507-425, Section "H" of Criminal District Court of Orleans Parish.

court denied the defendant's motion to reconsider the sentence and granted his motion for appeal.

This appeal was timely filed.

***Relevant Evidence Adduced at Trial***

On April 9, 2014, the New Orleans Police Department (NOPD) received a 911 call at 4:06 PM reporting a shooting at the intersection of Eliza and Lebouef Streets in Algiers.[2] Detective Theophilis Kent responded, arriving at the scene approximately forty-five minutes after the shooting, and conferred with the responding officers and crime lab personnel on the scene.[3] Detective Kent testified that when he left the crime scene that day, he had one name of a possible suspect, although no witnesses voluntarily spoke with the police officers. Further canvassing of the neighborhood the next day for witnesses and surveillance video was fruitless.

A month later (May 8, 2014), Detective Kent interviewed Kendall Sylve who was incarcerated in Orleans Parish Prison on a pending burglary charge. During the interview, Mr. Sylve identified the defendant in a photographic line-up but refused to memorialize the identification by signing the photo. In mid-May, however, Mr. Sylve contacted Detective Kent, indicating he had additional information which he was willing to supply in the presence of his attorney.

---

[2] The recording of the 911 call, which was played for the jury, indicates the homicide was reported at 4:06 p.m. on April 9, 2014.

[3] A bullet was recovered from the victim's body during the autopsy but no murder weapon was found and no DNA evidence links the defendant to the shooting. The State's ballistics and firearms expert Detective Sean McElrath identified a report he authored which indicated that the copper-jacketed projectile collected during the autopsy was submitted to the crime lab for testing and determined to be from a .38 caliber bullet. Because the murder weapon was not recovered, the lab was unable to make a comparison analysis between the recovered bullet and a weapon. The State also introduced the transcript of the forensic pathologist's report indicating that the victim suffered two gunshot wounds: a non-fatal wound to his left thigh and the fatal wound, which entered the victim's body at the top of the left shoulder at the base of the neck, perforating the cervical inlet, the first rib, the upper lobe of the left lung, the aorta, diaphragm, stomach, liver and small bowel.

Accordingly, on June 26, 2014 Detective Kent met with Mr. Sylve and his defense counsel, as well as a representative of the District Attorney's Office. At this meeting Sylve gave a recorded statement, identified the defendant as the shooter from a photo lineup, and signed his name to the photo he identified. Based on this identification, an arrest warrant was issued for the defendant.

The defendant's father and victim's half-brother, Curtis Williams, Jr., testified that he was the son of Verna Williams and Curtis Williams, Sr., that he was serving a seventy-eight year sentence for attempted murder, and that he had talked to his mother (now deceased) after his brother was shot.[4]

Ms. T'she Salvant identified herself as the victim's daughter and the defendant's cousin. Ms. Salvant stated a couple of days before the shooting she received a phone call from her father who was angry and stated that he had been in an altercation with his stepfather, Curtis Williams, Sr. . When she arrived at the house at 1422 Eliza Street, her father told her he had dialed 911 because of the altercation and that "Trae and Curtis was going to kill him." She conceded that the police never arrived and, although she requested them, she never received any documents related to the purported 911 call. She related that her father visited his mother daily but did not get along with his stepfather. In response to the prosecutor's question, she agreed that the defendant and his grandfather were close, explaining that the defendant grew up in the house with his grandparents and "Curtis practically raised Trae." .

Mr. Sylve testified that the week "the incident went down," he was staying in a friend's house next door to the Williams' home on LeBoeuf Street looking for and using heroin. He acknowledged that he was a junk during that period of his

---

[4] The audio of the jailhouse call was played for the court out of the jury's presence.

life and that he agreed to testify in exchange for plea bargains he received in relation to his 2014 burglary and 2015 drug charges.[5]  According to Mr. Sylve's testimony at trial, on the afternoon of the shooting, he was playing basketball at the intersection of Lebouef and Eliza streets "waiting on the dope man to get there" when he heard the victim and his mother arguing in the Williams home.  He next saw the defendant enter the house as Mr. Salvant exited it and, moments later as he was chasing a ball towards the corner, he heard shots and looked up to see the defendant shoot his uncle.  Mr. Sylve insisted that he immediately returned to playing basketball after the shooting and remained there (very near the spot where the shooting occurred and, thus, the victim's body) the entire time the police were on the scene but the police never spoke to him or questioned him.

Mr. Sylve acknowledged that he had been in a fight with Mr. Salvant the day before his murder over a DVD player and that a family member suggested his name to the police as a suspect after the shooting.  Accordingly, when the police came to see him in jail a month later after he was arrested on theft charge, his main focus was to avoid being charged with the murder.  Thus, he told Detective Kent that he heard shots but did not see the shooting, although he indicated that after the shooting the defendant walked past him.  Two days later, however, Mr. Sylve's charge was upgraded to burglary and he requested a second meeting with Detective Kent.  At the second meeting with Detective Kent, attended by Mr. Sylve's attorney and a representative from the District Attorney's office, Mr. Sylve identified the defendant in a photographic line-up as the shooter and executed a Memorandum of Understanding regarding his burglary charge.  Subsequently,

---

[5] Mr. Sylve was sentenced to five years on each of the charges.  He was on parole at the time of this trial.

4

while out on bond for the burglary charge, Mr. Sylve was arrested for heroin and, again, negotiated a plea deal with the State in exchange for his continued cooperation in this matter.

***Discussion***

On appeal, the defendant raises four assignments of error: (1) the district court erred in allowing inadmissible hearsay at trial; (2) the district court erred in denying the inclusion of two requested jury charges; (3) the defendant's conviction by a 10-2 jury vote was in violation of the Equal Protection clause of the Fourteenth Amendment; and (4) the defendant's 60 year sentence at hard labor is unconstitutionally excessiveness.

*Assignment of Error 1*

The defendant argues that the State attempted to bolster Mr. Sylve's testimony by eliciting inadmissible hearsay from witnesses suggesting that more evidence existed to corroborate Mr. Sylve's identification of the defendant as the shooter.

*Applicable Law*

Pursuant to La. Code Evid. 801(C), "'Hearsay' evidence is a statement, other than one made by the declarant testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." It "rests for its value upon the credibility of the out-of-court asserter." *State v. Wille,* 559 So.2d 1321, 1329 (La. 1990) (citation omitted). A primary justification for the exclusion of hearsay is that the defendant "has no opportunity to cross-examine the absent declarant to test the accuracy and completeness of the testimony." *Id.* Moreover, the party who purportedly made the statement that is being repeated in court by another party was not under oath at the time of the statement. *Id.* In addition, pursuant to the

5

confrontation clause of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him," U.S. Const. amend. VI, and when an assertion by one party is presented through the testimony of another party there is no opportunity for confrontation. *Id.*

Reversal of a defendant's conviction is appropriate when there is "a reasonable possibility that the evidence might have contributed to the verdict." *State v. Skipper,* 2011-1346, p. 10 (La. App. 4 Cir. 10/10/12), 101 So.3d 537, 544 (citation omitted). To determine whether the admission of hearsay was harmless error, this court must consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *State v. Legendre*, 2005-1469, pp.9-10 (La. App. 4 Cir. 9/27/06), 942 So. 2d 45, 52 (citation omitted).

*Hearsay admitted at trial*

In the State's opening statement, the prosecutor asserted:

> So, ladies and gentlemen, Detective Kent, like it has gone so far, has a suspect. His suspect has been confirmed. But he at this point, because he failed to memorialize the photograph, he does not have enough to obtain an arrest warrant for this individual.
> *Crime Stopper tips roll in.* (emphasis added).

Clearly, the implication of the prosecutor's reference to "tips roll[ing] in" is that the tips named the defendant as the perpetrator of the crime, thus supporting Mr. Sylve's identification of the defendant as the shooter.

Again, during Detective Kent's testimony, the prosecutor asked:

6

"And those Crime Stopper tips confirmed that the identification of Mr. Salvant (sic) made, correct?"

The defendant's hearsay objection was sustained by the district court and Detective Kent was prohibited from responding to the question, but again the clear implication of the prosecutor's question, particularly in light of the earlier remark during his opening statement referencing "tips rolling in," was that Detective Kent would confirm that the tips named the defendant as the perpetrator of the crime.

In addition, the district court erred in allowing Ms. Salvant's testimony regarding her father's statement several days before the shooting under the "present sense impression" exception to the hearsay rule. Pursuant to La. Code Evid. art. 803(1), a "present sense impression" is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." This exception is strictly interpreted.[6] As the Louisiana Supreme Court explained, "[t]he critical factor is whether the statement was made while an individual was 'perceiving' the event or 'immediately thereafter,'" *i.e.,* "[t]he statement may follow 'immediately' after perceiving an event, *allowing only for 'the time needed for translating observation into speech." Buckbee v. United Gas Pipe Line Co. Inc.*, 561 So. 2d 76, 84 (La. 1990) (quoting McCormick on Evidence, Sec. 298) (emphasis added).

In this case, Ms. Salvant was allowed to testify as to her father's statement but, according to the narrative she presented, the statement cannot be characterized as a "present sense impression." Ms. Salvant testified that she spoke to her father on the phone at some point after he had an altercation with his stepfather, although

---

[6] *See* 1988 *Comment* to La. Code Evid. 803(1) ( Paragraph (1) codifies prior Louisiana law and is based on Federal Rule of Evidence 803(1). The immediacy requirement of this exception should be strictly interpreted. C. McCormick, On Evidence § 298, at 862 (3d ed. 1984).)

while he was still angry, and he told her there had been a fight and that he had called 911. She then went over to her father's house.[7] It was only after she arrived at his home that Mr. Salvant made the statement that his stepfather and his nephew (the defendant) were going to kill him. To be admissible under the "present sense" impression, however, the hearsay statement must have been made immediately after an event occurred, that is within the time period necessary to formulate the words to describe an event. As described by Ms. Salvant, a considerable amount of time passed between her father's fight with his stepfather and when he made the statement to her. As such, it was clear error for the district court to allow it into evidence as a "present sense impression" exception to the hearsay rule.

As reflected by the 10-2 manslaughter verdict and the earlier mistrial, the evidence of the defendant's guilt in this matter is not compelling, resting entirely upon the identification of a self-described junkie who acknowledged that he identified the defendant as the shooter to deflect suspicion from himself and only after he was incarcerated on other charges so that cooperating with the State was to his benefit. Beyond Mr. Sylve's problematic identification of the defendant as the shooter, there is no evidence connecting the defendant to the shooting. In this scenario, the introduction and/or reference to inadmissible hearsay suggesting that Mr. Sylve's identification testimony was corroborated by Crimestopper tips and that which provided the defendant with a motive (Ms. Salvant testimony that the victim told her two days before the shooting that he (the victim) had called 911 "because he got into an altercation with Curtis and that Trae and Curtis was going to kill him") does not constitute harmless error.[8]

---

[7] There is no evidence in the record as to the distance or how long it took her to get there.
[8] *See e.g., State v. Parks*, 08-423, pp. 11-12 (La.

*Conclusion*

Because the defendant's conviction is based on inadmissible hearsay evidence that, under the circumstances of this case, cannot be construed as harmless error, the defendant's conviction is reversed. We pretermit discussion of the defendant's remaining assignments of error.

**REVERSED.**

---

App. 5 Cir. 11/25/08) 2 So.3d 470, 477:

> Conduct or declarations of the decedent shortly before his killing may sometimes be admissible as tending to show the immediately antecedent circumstances explanatory of the killing and connecting the defendant with it. *State v. Leonard*, 05–42 at 16, 910 So.2d at 987. However, hearsay evidence showing the victim's state of mind for the purpose of proving the motive of the defendant is inadmissible, since its prejudicial effect on the defendant far outweighs its probative value as to the victim's state of mind. *Id.*